# People, ex rel. Frank Adams v. Hover, et al.

*District Court of Arapahoe County, Feb. 27, 1902, No. 33673.*

John T. Bottom, Milton Smith and E. L. Richardson, for petitioners; Wm. F. Orahood, H. L. Ritter and Chas.P. Butler, for respondents.

Carpenter, J.

This is a proceeding instituted by the District Attorney upon the relation of Frank Adams and others to compel the City Council of the City of Denver, by writs of mandamus, to appropriate in the annual appropriation ordinance certain sums of

money to defray the expenses incident to the exercise of the powers of the Fire and Police Board of the City of Denver during the year 1902. The sums demanded are $225,451 for the maintenance of the fire department, $244,403.79 for the maintenance of the police department and $4,800 for the maintenance of the excise department.

There was issued in the first instance an alternative writ which, by leave of court, was subsequently amended. The matter is now before the court upon demurrer of respondents to the amended writ.

The determination of the question thus presented involves the construction of those parts of the charter of Denver of 1893 relating to the creation of the fire and police board of said city, and its powers, duties and prerogatives, and especially of general section 84 of the charter as it appears in the compilation of 1898, which section reads as follows:

"Gen. Sec. 84. During the last quarter of each calendar year, said board shall present to the mayor of the city of Denver, a detailed statement of the moneys necessary to defray the expenses of said board during the succeeding year, with a statement of the probable expenses to be incurred by said board; and in the annual appropriation ordinance for the next calendar year, the city council shall provide for the appropriation of sufficient moneys to defray the expenses incident to and to be incurred by said board in the exercise of the powers hereinabove granted, using such estimates as a basis for such appropriation, and conforming thereto as nearly as the city's finances will permit."

One of the grounds of demurrer is:

"That the court was without jurisdiction in the matters stated, because the facts and things in the said writ stated are, by the city charter of the city of Denver, placed within the absolute control and discretion of the city council of the said city."

The major portion of the argument was directed to the question raised by this specification of the demurrer. Its resolution depends upon the interpretation of the language of section 84 above quoted.

In the interpretation of a statute we look first to the language employed. If that be clear in meaning, we need look no further. If the language is not clear, then resort must be had to the context and statutes *in pari materia*, if there be such. The interpreter may also bring to his aid the facts and conditions existing anterior to, and at the time of, the adoption of the law which gave occasion for it. That is to say, he should ascertain the mischief to be remedied. The court, in the ascertainment of the object of the law, may have recourse to the judge's recollection of anterior and contemporary conditions and the state of public opinion with respect thereto, if the judge was a member of the community at that time; or it may resort to contemporaneous history or writings for the purpose of advising itself.

Let us look first, then, at the language of the section to be interpreted. It provides that in the annual appropriation ordinance "the city council shall provide for the appropriation of sufficient moneys to defray the expenses incident to and to be incurred by said board in the exercise of the powers hereinabove granted." If the section ended here, there could be no doubt as to its meaning. It would be a specific injunction to the city council, but it

would still leave to the city council the exercise of its discretion as to what constituted a sufficient sum. This discretion is narrowed somewhat by the phrase, "Using such estimates as a basis for such appropriation." That is to say, the council is to be guided in the exercise of its judgment by the detailed estimates furnished by the board, as provided in the first clause of the section. But the range of the council's discretion, it will be observed, is further limited by the concluding clause, "and conforming thereto as nearly as the city's finances will permit." This concluding clause appears to me to divest absolutely the city council of any discretion with respect to the amount sufficient to defray the board's expenses in the administration of its powers. The determination of the amount sufficient to defray its expenses is committed wholly to the board, and, in the absence of fraud or mistake, is conclusive upon the mayor, the city council and every other branch of the municipal government.

Some stress was laid by respondents' counsel upon that provision of General Section 153, which is to the effect that the city council is not necessarily governed by the estimate of the mayor. It is my opinion that such provision does not in any respect qualify section 84. Section 153 relates to those departments of the city government for which the mayor is authorized to make estimates. He is not authorized to make estimates for the fire and police board. That duty, as has been stated, devolves upon the board itself, and the section under consideration requires the council to be guided by the estimates of the board, and to conform to it if the revenues will allow. By a well-settled rule of interpretation the

appropriation for the fire and police board must be considered not included among the estimates referred to in section 153.

Recurring to section 84, it seems sufficiently clear that, in case the probable income of the city will be sufficient, it is the duty of the city council to appropriate to the use of the fire and police board the entire amount called for by its estimate, and with respect to the performance of such duty no discretion is vested in the city council. Assuming that the city's probable income for the year is not sufficient to permit the setting aside for its use of the full amount required by the board, it becomes the duty of the city council to approximate the Board's estimates as nearly as it may be done.

It may be said that this interpretation of the section under consideration still leaves it open to the city council to exercise its judgment to determine whether the city's finances will permit the appropriation of the full amount estimated by the board, or how nearly they will permit the appropriation to conform to such estimates, and this is true. But is its judgment in this regard conclusive? I think it is not. This conclusion is reached by consideration of those provisions of the charter relating to the creation of the fire and police board, and to its powers, duties and prerogatives, and also of the conditions which gave occasion for such legislation.

It is unnecessary to say more respecting the conditions existing in this city for some years prior to 1891, when the Fire and Police Board was created, than that they were such as to have created an almost unanimous demand from the citizens of Denver for such legislation as would entirely remove from the control

of the mayor and the city council the administration of the fire and police departments. In response to this demand a fire and police board for the City of Denver was created by an act approved March 4th, 1891. And the city charter was further amended in that year by an act approved March 31st, which enacted a provision with respect to the annual appropriation for the use of the Board similar to section 84 of the present charter, with this exception, that the statement of the money necessary was to be presented directly to the city council instead of through the mayor.

I will now advert briefly to some of the provisions of the charter of 1893 relating to the creation of the Fire and Police Board, and to the powers, prerogatives and duties conferred and imposed upon it. General section 75 provides, among other things, that there shall be a fire commissioner, a police commissioner and an excise commissioner, and that these three shall constitute the Fire and Police Board of the City of Denver, and that "all the operations of the bureaus of fire, police and excise shall be subject to the general control of said board." Section 76 provides that these three commissioners shall be appointed by the governor of the state by and with the advice and consent of the senate. Section 78 declares that "the said board shall have full, complete and exclusive power and authority on behalf of the city to perform all executive functions of the city in the organization, management and control of the fire and police departments of the city." By section 79 it is provided that "the board shall have full, complete and exclusive authority to expend for and on behalf of the city all funds set apart in the annual

appropriation ordinance for the use of said board."

Sec. 81 provides that all patrol wagons, fire and police stations, engines, etc., "and all other things pertaining to the fire and police service and detective department of the city shall be turned over to and shall thereafter be under the absolute control and management of said board."

From all of the foregoing, it seems to me clearly manifest that the legislative intent was that the Fire and Police Board should not be in any wise dependent upon the favor or discretion of the mayor and council for the means necessary to perform the duties required of them by law.

It was said at the bar that so to construe the charter is to confer powers upon the Fire and Police Board far superior to those of the mayor and council. This may be true, but as I construe it thus the law is written. It is to be remembered that these several branches and departments of the municipal government are the creatures of the sovereign will, which can give and withhold power and prerogative according to its own good pleasure. The preservation of peace and good order among its citizens, the promotion of their general welfare, the protection of life and property, in short, police power, belongs primarily to the state, the sovereign power. It may designate such agencies as may seem to it proper through which to exercise its governmental powers and perform its governmental duties. It created the Fire and Police Board, and conferred upon it certain powers. It created the city council and imposed upon it certain duties, one of which is to provide requisite means for the use of the former in the exercise of its powers.

It is no argument to say that if the City Council fails to perform its duty to the Fire and Police Board, and thus cripples or renders non-effective the bureaus under its control, that the people of the city will hold the Council responsible and punish it at the polls. Changing the administration of that department of the municipal government at the next municipal election would afford no adequate redress for the injury that may come to the citizens and their property during the period intervening between now and the next municipal election. The plain intention of the legislature, as I read the charter of 1893, is that the people of the City of Denver shall, through the agency of the Fire and Police Board, have adequate police protection all the time, regardless of political changes or of the power of the people of Denver to make political changes in the legislative department of the municipality; and to rule that the action of the City Council in respect to the amount to be appropriated for the use of the Board, no matter how arbitrary or capricious, is conclusive, would be to subvert the legislative plan and purpose.

Now, as to the phrase, "as the city's finances will permit": This must be given one of two constructions. It means either that after the charges of the city fixed by law have been cared for in the appropriation bill, if sufficient money remains to appropriate the full sum required by the Board the City Council shall make such appropriation; or it means that the amount appropriated to the Fire and Police Board shall approximate the estimates as near as may be, due regard being had for the necessities of the other departments. It is not necessary now to determine which of these is the correct interpretation, for

whether it be the former or the latter, the ruling upon this demurrer would be the same.

It is urged by the respondents that it does not appear by the alternative writ that the city's finances will permit a larger appropriation to the Fire and Police Board. But it does appear that the city's probable income for the present year is $966,406. Now, if the meaning of the concluding phrase of section 84 is as first above suggested, then it would seem to be reasonably clear that the income will be sufficient to warrant the appropriation of the full amount estimated by the Board. It also appears upon the face of the writ that it is proposed by the City Council to make excessive and unnecessary appropriations to other departments of the city government, and that such excessive and unnecessary appropriations aggregate a large sum of money.

If the charge in respect to excessive and unnecessary appropriations is true, and it must be assumed to be true upon this demurrer, then under the second interpretation of the concluding clause of section 84 the proposed action of the City Council, if consummated, will be the violation of a legal injunction. The City Council cannot evade its duty in this way. If such action were permissible, then it might appropriate all of the city's income to other purposes, and accomplish by indirection that which it would not be permitted to do directly.

The amended writ is fairly subject to stricture on the grounds that it is largely made up of evidential, argumentative and circumlocutory statement, therein violating the requirement of the civil code that the cause of action be stated concisely.

But the appellate courts of this state require the

spelling out of a cause of action if it be possible. It can be gathered from the pleading that the members of the city council have declared their purpose not to approximate the estimates of the fire and police board as nearly as the city's finances will permit, and this shows a refusal on their part to perform "an act which the law specifically enjoins as a duty," which entitles the party who will suffer injury by reason of such refusal (in this case the state) to a writ of mandamus to compel such performance. It therefore must be ruled that the alternative writ states a cause of action.

There is nothing in the objection that the district attorney could not bring the suit in the name of the people. He did not misconceive his duty in so doing.

The demurrer to the amended alternative writ is overruled.